IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| S. GREGORY HAYS, Receiver for Travis E. Correll, et al., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:06cv496 |
| KERRY G. SITTON; KG SITTON AND COMPANY, LLC; and KGS GROUP, LLC | § § § § | |
| Defendants. | § § | |

**MOTION FOR ORDER TO SHOW CAUSE WHY ANGELIC ENTERTAINMENT, INC. SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH RECEIVERSHIP ORDER AND BRIEF IN SUPPORT**

TO THE HONORABLE RICHARD A. SCHELL, UNITED STATES DISTRICT JUDGE:

COMES NOW S. Gregory Hays, the duly appointed and acting Receiver in this action (the "Receiver"), and moves this Court for an Order requiring Angelic Entertainment, Inc. (the "Respondent") to appear and show cause why it should not be held in contempt for failing to comply with this Court's Agreed Order Appointing Receiver[1] dated December 18, 2006 (the "Receivership Order") as follows:

I.

CERTIFICATE OF CONFERENCE

1.1. Filed concurrently with this motion, and incorporated by reference herein for all purposes, is the Declaration of Clark B. Will (<u>Exhibit A</u>) in support of this motion setting forth his investigation, on behalf of the Receiver, concerning, and attempts to collect, $500,000.00

---

[1] Agreed Order Appointing Receiver, Freezing Assets, Requiring an Accounting, and Granting Other Preliminary Injunctive Relief, Docket no. 6.

**MOTION FOR ORDER TO SHOW CAUSE WHY ANGELIC ENTERTAINMENT, INC. SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH RECEIVERSHIP ORDER AND BRIEF IN SUPPORT - Page 1**

fraudulently transferred by KG Sitton and Co., LLC to Respondent[2] prior to the entry of the Receivership Order in this action. The correspondence attached as <u>Exhibits A-3</u> and <u>A-4</u>, respectively, to the Will Declaration fairly document the sum total of the communications between the Receiver's counsel and counsel for the Respondent. Having failed to receive a satisfactory or illuminating response from Respondent, who admits it received the $500,000.00 but vaguely claims without any evidence whatsoever that said funds were somehow earned, and which then unequivocally rejected the Receiver's demand, it appears that no agreement can be reached regarding the substance of this Motion. Therefore, the issue is submitted to the Court for resolution.

## II.

### BACKGROUND FACTS

2.1. In addition to the Will Declaration, this motion is supported by portions of a deposition transcript containing sworn testimony of Jerry Glenn Long on December 18, 2007, which are attached as composite <u>Exhibit B</u> hereto and incorporated by reference for all purposes.

2.2. As the Court is aware, the instant case shares a common set of underlying facts with and is ancillary to the case also pending in this Court styled *Securities and Exchange Commission vs. Correll, et. al.* Civil Action No. 4:05CV472 (the "SEC Litigation"). As noted above, the Court herein appointed S. Gregory Hays as Receiver for Kerry G. Sitton, KG Sitton and Company, LLC, and KGS Group, LLC (the "Sitton Defendants"). Prior to doing so, the Court had appointed Mr. Hays as Receiver for the defendants and relief defendants in the SEC Litigation, including Travis E. Correll ("Correll"). As alleged in the Complaints filed in the Correll Litigation and SEC Litigation, Correll and the Sitton Defendants operated a *Ponzi* scheme and defrauded numerous

---

[2] By and through an entity known as "Mustang Pictures, Inc."

MOTION FOR ORDER TO SHOW CAUSE WHY ANGELIC ENTERTAINMENT, INC.
SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH
RECEIVERSHIP ORDER AND BRIEF IN SUPPORT - Page 2

investors out of millions of dollars. Sitton and Correll then used investor funds to invest in and purchase various assets around the country for their own personal use and benefit, or for that of their friends and families. The Sitton Receivership Estate is but a smaller subpart of the larger Correll Receivership Estate.

2.3. Within the past several months, the Receiver has undertaken substantial efforts to locate Receivership Assets, as those assets are defined under the Sitton and Correll Receivership Orders. The Receivership Assets are comprised of any and all assets, liquid or illiquid, personal or real property, that were purchased or acquired using improperly acquired investor funds. Receivership Order at ¶ 1.

2.4. In connection with the Receiver's investigation, the Receiver has determined the following:

(A) On or about June 3, 2005, KG Sitton and Co., LLC, Defendant herein, paid the sum of $500,000.00 to Mustang Pictures, Inc. ("Mustang"). Will Decl. at ¶ 3; Long Dep. at p. 15, ll. 9-12; p. 16, ll. 21-25; p. 17, ll. 1-4. KG Sitton and Co., LLC was an entity owned and controlled by Kerry Sitton, the lead Defendant herein. Will Decl. at ¶ 3. Mustang was a Texas Corporation chartered by individuals named Jerry Long and Ron Holloman in 2002 for the sole purpose of raising money for production of a movie titled "London, Texas" and funneling it to Angelic. Long Dep. at p. 5, ll. 21-25; p. 6, ll. 1-4; p. 8, ll. 15-21; p. 21, ll. 12-20. Upon information and belief, Angelic is an existing company owned and controlled by Mark Maine. Will Decl. at ¶ 3; Long Dep. at p. 7, ll. 7-11.

(B) KG Sitton and Co., LLC paid the $500,000.00 check to Mustang pursuant to a Subscription Agreement dated June 3, 2005 by which an entity called TK Productions LLC[3] acquired an equity stake in the proposed movie.[4] Will Decl. at ¶ 4; Long Dep. at p. 26, ll. 20-25; p. 27, ll. 1-21.

(C) Literally within minutes of the $500,000.00 check being handed to Mr. Long by Mr. Sitton, Mr. Long deposited it into Mustang's Texas Bank[5] account, and immediately thereafter had the funds wired to Angelic. Will Decl. at ¶ 5; Long Dep. at p. 18, ll. 1-14; p. 22, ll. 5-17; p. 23, ll. 1-12.

(D) The referenced movie was never actually made and no value was given by Angelic in return for the funds provided by Mustang. Will Decl. at ¶ 6; Long Dep. at p. 24, ll. 3-8. Despite this fact, Angelic never returned the $500,000.00 to Mustang or anyone else, despite Mark Maine's communications to Mr. Long that the money was "bad" or "tainted" and was going to have to be returned due to the allegations made in the *Correll* action. Will Decl. at ¶ 6; Long Dep. at p. 24, ll. 9-25; p. 25, ll. 1-25; p. 28, ll. 13-16.

2.5. On August 17, 2007, Receiver's counsel sent Mark Maine, on behalf of Angelic, a letter[6] setting forth the Receiver's claim to the $500,000.00 payment and demanding its return. Will Decl. at ¶ 7. On August 27, 2007, Angelic, by and through its attorneys, sent a written response to

---

[3] A company owned and controlled by Kerry Sitton and Travis Correll.

[4] True and correct copies of the Subscription Agreement and $500,000.00 check are attached to the Will Declaration as Exhibits A-1 and A-2, respectively, and incorporated herein by reference.

[5] Located in Henderson, Texas. Mr. Long had opened this corporate account at Texas Bank on the same day that the $500,000.00 check was paid to Mustang. Long Dep. at p. 23, ll. 1-3.

[6] True and correct copies of Mr. Will's August 17, 2007 letter and Angelic's August 27, 2007 response are attached as Exhibits A-3 and A-4, respectively, to the Will Declaration and is incorporated herein by reference.

**MOTION FOR ORDER TO SHOW CAUSE WHY ANGELIC ENTERTAINMENT, INC. SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH RECEIVERSHIP ORDER AND BRIEF IN SUPPORT - Page 4**

Receiver's counsel wherein it speciously claimed that "Mustang received full value for the payment made to our client." *Id.* As support for this statement, Angelic enclosed an alleged copy of a Production Book Transfer Agreement dated December 1, 2005 supposedly signed by Mr. Long on Mustang's behalf and offered that Angelic had previously transferred to Mustang the "production book" and "various promotional items associated with preproduction promotion" of the movie. *Id.*

2.6.   Unfortunately for Angelic, this never occurred. Mr. Long's sworn testimony shows:

(A)   that Mr. Long never signed the Production Book Transfer Agreement, and in fact, had never seen it prior to having it shown to him by the Receiver's investigator;[7]

(B)   that Mr. Maine likely electronically reproduced Mr. Long's signature on the forged agreement without Mr. Long's knowledge or consent, as he had done in the past;[8]

(C)   that neither Mr. Long, nor any other principal of Mustang, ever received any "production book" or "promotional materials" from Angelic.[9]

Thus, the evidence clearly demonstrates that Mustang received no value whatsoever from Angelic for the $500,000.00 it received from KG Sitton and Co., LLC.

2.7.   The Receiver, having investigated the books and records of the Sitton defendants and having interviewed various parties and third parties in this case, has determined that the $500,000.00 payment by KG Sitton and Co., LLC was comprised of funds obtained improperly by Mssrs. Sitton and/or Correll from investors in the *Ponzi* scheme that is the basis for both lawsuits. Will Decl. at ¶ 10. As such, those funds constitute a Receivership Asset as defined in the Receivership Order.

---

[7]   Long Dep. at p. 28, ll. 20-25; p. 29, ll. 1-25; p. 30, l. 1; p. 34, ll. 22-25; p. 35, ll. 1-7.

[8]   Long Dep. at p. 32, ll. 11-25; p. 33, ll. 1-25; p. 34, ll. 1-15.

[9]   Long Dep. at p. 35, ll. 8-11.

Respondent is in possession of Receivership Assets (cash) acquired by Sitton and Correll from investors in violation of the securities laws of the United States.

2.8. Paragraph 9 of the Receivership Order states that any person or entity maintaining or having custody of any Sitton Receivership Estate Asset shall, upon receiving notice of the Order, provide to the Receiver records of and tender such assets to the Receiver. The funds received by Angelic from Mustang are a Sitton Receivership Asset and are recoverable by the Receiver. Despite having received actual notice of the Receivership Order along with the referenced August 17, 2007 demand letter, Respondent not only has failed and refuses to tender the funds or any records pertaining to it to the Receiver, but it has also apparently lied to the Receiver and forged a document in an attempt to avoid its clear obligation to return the funds.

### III.

#### ARGUMENT AND AUTHORITIES

3.1. A contempt of Court is the disregard of judicial authority. *Sigety v. Abrams*, 632 F.2d 969, 976 (2nd Cir. 1980). Stated another way, Federal Courts have inherent power necessary to achieve the orderly and expeditious disposition of their dockets and these powers include the authority to punish for contempt in order to maintain obedience to court orders and authority to impose reasonable and appropriate sanctions. *Natural Gas Pipeline Co. of America v. Energy Gathering, Inc.*, 86 F.3d 464, 465 (5th Cir. 1996). A person who fails to obey a lawful court may be punished for contempt. *Travelhost, Inc. v. Blandford*, 68 F.3D 958, 961 (5th Cir. 1995). In a civil contempt proceeding, the movant must establish that: (1) a court order was in effect; (2) the order required certain conduct by the respondent; and (3) the respondent failed to comply with the order. See *American Airlines, Inc. v. Allied Pilots Association*, 228 F.3d 574, 581 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 1190 (2001), *citing Martin v. Trinity Industries, Inc.*, 959 F.2d 45, 47 (5th Cir.

1992). The standard of proof is clear and convincing evidence. *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987). However, the conduct need not be willful so long as the respondent actually violated the court's order. *Allied Pilots*, 228 F.3d at 581.

  3.2. Moreover, the Receivership Order is enforceable by this Court's inherent power to punish a contemnor for failure to comply with a court order. In *SEC v. AMX Int'l, Inc.*, 7 F.3d 71, 72-73 (5th Cir. 1993), the United States Court of Appeals for the Fifth Circuit dealt with the issue of the appropriate remedy for violation of a disgorgement order. In that case, the SEC sought to enforce a disgorgement order by means of contempt against a defendant who had agreed to disgorge certain assets. *Id.* at 72. The Fifth Circuit held that contempt was an appropriate means by which to enforce a judgment requiring disgorgement. *Id.* at 73. The Fifth Circuit reasoned that because a disgorgement order constituted an injunction in the public interest rather than a mere money judgment or debt, contempt was the appropriate enforcement mechanism to ensure compliance with the order. *Id.* at 74-75. Accordingly, a disgorgement order "was properly enforceable by the court's contempt powers, including incarceration until the court-ordered payments were made." *Id.* at 76.

  3.3. The Fifth Circuit has also recognized that a contempt proceeding is an appropriate mechanism to enforce the rights of a court-appointed receiver. *See Santibanez v. Wier, McMahon & Co.*, 105 F.3d 234, 242 (5th Cir. 1997). Civil contempt proceedings are appropriate to protect the rights of the parties to the litigation or those who have an interest in the subject matter of the lawsuit, including the defrauded investors who are injured as a result of Sitton's and Correll's scheme. *Louisiana Education Assn. v. Richland Parish School Bd.*, 421 F. Supp. 973, 975 (D.C. La. 1976).

  3.4. The Will Declaration filed concurrently with this motion, and the sworn testimony of Mr. Long, together conclusively establish that the Respondent is in possession of Receivership Estate Assets and is refusing to undertake any effort to turn over that asset, or records pertaining to

it, to the Receiver, and in fact, is actively engaged in deceiving the Receiver and this Court by forging a document and concocting a transparent story that is directly contradicted by the sworn testimony of Mr. Long, the President of Mustang. This despite having actual notice of an existing Order of this Court requiring that Angelic comply with it. The Respondent has shown more than a mere disregard of the judicial authority of this Court; it has openly and blatantly refused to comply with the Receivership Order and has shown a willingness fabricate stories to avoid compliance. The Receiver respectfully submits that such conduct should not be tolerated by this Court. In order for the Receiver to perform his duties charged to him under his appointment, the Receiver requests the assistance of this Court and requests that this Court enter an order setting a hearing for the Respondent to appear and to show cause why it should not be held in civil contempt.

## IV.

### PRAYER FOR RELIEF

4.1. The Receiver requests that this Court:

(A) Set a contempt hearing as soon as possible;

(B) Order the Respondent to appear in person, through a representative, before this Court on the date of the hearing, then and there to show cause, if any there may be, why it should not be held in contempt for refusing to turn over to the funds referenced above as ordered in the Receivership Order;

(C) Find the Respondent in contempt of Court for failing to turn over to the Receiver the funds fraudulently transferred to it by Mustang; and

(D) Award the Receiver damages and losses due to the contempt, including reasonable and necessary attorney's fees incurred in the preparation of this motion and the hearing on same, such damages, if any, to be placed in the Sitton Receivership Estate.[10]

---

[10]Sanctions in a civil contempt proceeding may be awarded to compensate the movant for losses sustained as a result of the contemptuous conduct. *Id.* at 585, *quoting United States v. United Mine Workers of America*, 330 U.S. 258, 303-04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). A district court has broad discretion in assessing damages for civil contempt. *Id.*, citing *Long Island Rail Road Co. v. Brotherhood of Railroad Trainmen*, 298 F.Supp. 1347, 1350

**MOTION FOR ORDER TO SHOW CAUSE WHY ANGELIC ENTERTAINMENT, INC.
SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH
RECEIVERSHIP ORDER AND BRIEF IN SUPPORT - Page 8**

WHEREFORE, PREMISES CONSIDERED, the Receiver prays that he be granted the relief set forth above and that he receive such other relief, both at law and in equity, to which he may justly be entitled.

        Respectfully submitted,

        QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.
        2001 Bryan St., Suite 1800
        Dallas, Texas 75201
        (214) 871-2100 (Telephone)
        (214) 871-2111 (Telecopier)

By: /s/ Michael D. Clark
    Clark B. Will, SBN 21502500
    cwill@qsclpc.com
    Michael D. Clark, SBN 00798108
    mclark@qsclpc.com

        AND

J. David Dantzler, Jr.
Georgia Bar No. 205125
david.dantzler@troutmansanders.com
Merle R. Arnold, III
Georgia Bar No. 023503
merle.arnold@troutmansanders.com
**TROUTMAN SANDERS LLP**
600 Peachtree St., NE, Suite 5200
Atlanta, GA 30308-2216
(404) 885-3000
(404) 885-3995 (Telecopier)

ATTORNEYS FOR RECEIVER S. GREGORY HAYS

---

(E.D.N.Y. 1969). "The purpose is to compensate for the damages sustained." *Id.; see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

**MOTION FOR ORDER TO SHOW CAUSE WHY ANGELIC ENTERTAINMENT, INC. SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH RECEIVERSHIP ORDER AND BRIEF IN SUPPORT - Page 9**

## CERTIFICATE OF SERVICE

This is to certify that on the 5th day of February, 2008, all counsel of record in these proceedings have been served a copy of the above and foregoing via electronic notice.

/s/ Michael D. Clark
Michael D. Clark